NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 128

No. 2017-368

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Franklin Unit, |
| | Criminal Division |
| | |
| Kevin W. Cook | October Term, 2018 |

Martin A. Maley, J.

Heather J. Brochu, Franklin County Deputy State's Attorney, St. Albans, for Plaintiff-Appellee.

Matthew Valerio, Defender General, and Dawn Seibert, Appellate Defender, Montpelier, for
 Defendant-Appellant.

PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.

¶ 1. **EATON, J.** Following his conditional guilty plea to driving under the influence, defendant Kevin Cook appeals the trial court's denial of his motion to dismiss, in which he argued that his failure to signal a turn was not illegal under the circumstances and thus did not provide a reasonable, articulable suspicion for the arresting officer to stop his vehicle.[1] We affirm.

_____

[1] Although captioned solely as a motion to dismiss, the motion challenges the legality of the motor-vehicle stop and, consequently, seeks suppression of evidence obtained following the stop. The State recognized this in its opposition to the motion, which it captioned as an opposition to defendant's motion to suppress and dismiss, as did defendant on appeal.

¶ 2.    The facts are not contested.  Shortly after midnight on December 4, 2016, defendant was driving east on Hoyt Street in St. Albans and approached a "T" intersection where Hoyt and Main Streets meet.  Hoyt Street ends where it meets Main Street, and it has designated right- and left-turn lanes for drivers approaching the Main Street intersection.  There is a stop sign at the intersection for cars using Hoyt Street.  Preparing to turn right onto Main Street, defendant drove into the right-turn-only lane and stopped at the stop sign.  At that time, a police officer pulled onto Hoyt Street and noticed defendant's car stopped at the intersection without its turn signal on.  The officer watched defendant make the right turn onto Main Street without signaling and stopped defendant's car for that reason.  During the traffic stop, the officer smelled alcohol on defendant and conducted field-sobriety tests.  Ultimately, defendant was charged with driving under the influence of alcohol (DUI).

¶ 3.    Defendant filed a motion to dismiss the DUI charge.  He argued that the officer had no grounds to stop him because, although Vermont law requires drivers to signal their intention to turn under 23 V.S.A. §§ 1064 and 1065, drivers are not required to put on their turn signal when there is only one legal turning maneuver possible—such as turning right in a right-turn-only lane.  In a brief entry order, the trial court denied defendant's motion, citing this Court's decision in State v. Harris, 2009 VT 73, 186 Vt. 225, 980 A.2d 785.  On appeal, defendant argues that he did not violate the law when he followed his lane along its natural course without using his turn signal, and thus there was no basis to stop him.  The State argues that, regardless of a car's position on the road, drivers are not relieved of their obligation to use a turn signal; therefore, the officer was authorized to stop defendant for committing a motor-vehicle violation.

¶ 4.    "In reviewing a denial of a motion to suppress, we apply a deferential standard of review to the trial court's findings of fact, and we review the court's legal conclusions de novo."

2

State v. Fletcher, 2010 VT 27, ¶ 8, 187 Vt. 632, 996 A.2d 213 (mem.). Defendant does not challenge the trial court's brief factual determinations, which included that defendant's car made a right-hand turn at the intersection and changed directions from east to south onto a different street without using his directional signal. Rather, he contests only the court's legal conclusions. "Our examination of those legal conclusions is therefore nondeferential and plenary." State v. Bryant, 2008 VT 39, ¶ 9, 183 Vt. 355, 950 A.2d 467.

¶ 5.     Vermont motor vehicle statutes 23 V.S.A. §§ 1064 and 1065 govern drivers' obligation to signal when turning and moving on the road. In relevant part, § 1065 provides that "[a] right or left turn shall not be made without first giving a signal of intention either by hand or by signal in accordance with section 1064." 23 V.S.A. § 1065(a) (emphases added). Section 1064 explains that "[t]he signals provided for in section 1065 . . . shall be used to indicate an intention to turn, change lanes, or start from a parked position," id. § 1064(e) (emphasis added), and instructs that "[b]efore changing direction or materially slackening speed, a driver shall give warning of his or her intention . . . as provided in section 1065 . . . or with a mechanical or lighting device." Id. § 1064(a) (emphasis added). Additionally, § 1064 states that "[a] signal of intention to turn right or left when required shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning." Id. § 1064(d) (emphasis added). Here, we are charged with construing these provisions to determine whether defendant was required to signal prior to turning right onto Main Street, even though he was in a right-turn-only lane. We conclude that he was.

¶ 6.     In construing statutes, our goal is to implement the intent of the Legislature. Harris, 2009 VT 73, ¶ 5. In doing so, we assume the Legislature intended the plain, ordinary meaning of the language used. Id. If the legislative intent is clear from the language at issue, then the Court's "inquiry is at an end, and we enforce the statute according to its plain terms." Fletcher, 2010 VT

27, ¶ 10.  Defendant argues for an exception to the signaling requirement by reading into the statutes language that is not there.  Neither § 1064 nor § 1065 contain any express exception to eliminate the requirement for use of a turn signal when a car is positioned in a turn-only lane.  Rather, the statutory language consistently mandates the use of a signal whenever a driver effects a turn, using the word "shall."  See 23 V.S.A. §§ 1064(a), (d), (e), 1065(a).  We do not find the language of these statutes unclear or ambiguous.  As such, we conclude that, based on the plain language of the statute, defendant was required to signal prior to executing a right-hand turn.

¶ 7.  We have had occasion to consider the requirements of our turn-signal statutes several times in recent years, and this body of caselaw supports our conclusion here.  First, a change in direction, such as the ninety-degree change in direction defendant took from Hoyt Street onto Main Street here, may indicate that the driver is turning and that a signal is required under §§ 1064 and 1065.  See id. § 1064(a) (requiring driver to signal "[b]efore changing direction"); see also Harris, 2009 VT 73, ¶ 8 (remanding for trial court to consider relevant evidence as to whether vehicle exiting rotary had "changed directions," effecting turn, thereby triggering turn-signal requirement of § 1064(a)).

¶ 8.  Next, in State v. Fletcher, we explained that turn signal requirements under § 1064 apply regardless of traffic conditions.  2010 VT 27, ¶¶ 11-13.  In that case, we held that an officer had a reasonable, articulable suspicion to stop a motorist who did not activate her turn signal at three stop signs until she had come to a stop at the intersections, in violation of § 1064(d)'s requirement that a signal must be used for at least 100 feet before an intersection.  Id. ¶ 13.  In so doing, we rejected her contention that § 1064(d)'s "when required" language meant that turn signals were only required when necessitated by traffic conditions.  Id. ¶ 11.  On the contrary, we

4

held that the use of turn signals is required 100 feet from turning, regardless of traffic conditions. Id.

¶ 9.     Finally, and most recently, in State v. Hutchins, we held that continuing on the natural arc of a road did not trigger the turn-signal requirement. 2015 VT 38, ¶ 11, 198 Vt. 431, 114 A.3d 906 ("[A] vehicle following a circular or arcing roadway would not need to activate a turn signal to continue around that arc because it is the natural course of the road. Only upon departing from that natural course—and thus changing direction—would a 'turn' occur."). In Hutchins, the presence of a bisecting road did not change the trajectory of a car following the natural arc of the nonbisecting roadways or transform the path of the vehicle following that arc into a turn. Id. ¶¶ 11-12.

¶ 10.     These cases are consistent with one another and dictate the result here. It is undisputed that defendant's car changed directions from east to south when it made the right turn at the Main Street intersection. See Harris, 2009 VT 73, ¶ 8. It is also undisputed that defendant did not use his turn signal for the last 100 feet prior to the intersection. See Fletcher, 2010 VT 27, ¶¶ 11-13. Lastly, there was no natural arc to be followed at the Hoyt-Main Street intersection; a vehicle approaching the intersection traveling on Hoyt Street would have to turn either ninety degrees to the right or left at the stop sign. Therefore, there was no continuing trajectory of Hoyt Street for defendant to follow. See Hutchins, 2015 VT 38, ¶ 11.

¶ 11.     Defendant contends that he was not required to use his signal because the only legal path his vehicle could take from a right-turn-only lane was to turn right, as he did. In addition to the analysis outlined above, policy reasons support our rejection of this argument. We have long recognized that motor-vehicle statutes governing direction and stop signals are safety statutes intended to protect the public travelling on Vermont's roadways. See Smith v. Grove, 119 Vt.

5

106, 111, 119 A.2d 880, 883 (1956) (explaining that motor vehicle provision governing "Direction and stop signals" "is a safety statute" in context of negligence proceedings). Our interpretation, requiring turn signals in compliance with §§ 1064 and 1065, furthers this goal. First, cars approaching intersections from other directions, or on other intersecting streets, may be unable to see the positioning of another vehicle on the roadway, such as its placement in a right-turn-only lane. While positioning in a turn-only lane may be apparent to the driver of that vehicle, it is not necessarily apparent, especially at night, to the drivers of other vehicles. The use of the turn signal may provide valuable information about the vehicle's intention in those instances, preventing potential collisions.[2]

¶ 12. Additionally, decisions from most other states have rejected obviating the requirement for the use of a turn signal from a turn-only lane. See State v. Smith, 42 A.3d 845, 847 (N.H. 2012) (holding New Hampshire law contains no exception excusing use of turn signal

---

[2] We also note that the Vermont Legislature has provided that the Commissioner of the Department of Motor Vehicles (DMV) "may adopt rules . . . governing the examination of new applicants for operators' licenses and may prescribe what shall be requisite to obtain or hold a license or learner's permit[,] . . . contribut[ing] to the selection of safe and efficient operators." 23 V.S.A. § 631. Pursuant to this authority, the Commissioner adopted rules pertaining to the organization and administration of the DMV that, in relevant part, specify the "various manuals . . . used by the department and . . . available to the public upon request." Organization of Department of Motor Vehicles, Rule 1(d), Code of Vt. Rules 14-050-043 [hereinafter DMV Rules], https://dmv.vermont.gov/enforcement-and-safety/laws/administrative-rules/organization-of-department-of-motor-vehicles [https://perma.cc/ MWQ9-77XM]. The Vermont Driver's Manual, which is the training guide used to instruct driver's license applicants on Vermont's motor vehicle laws and safety procedures prior to obtaining a license, is included in this list. DMV Rules, Rule 1(d)(4). Notably, the manual contains no exception for vehicles positioned in turn-only lanes. Vermont Department of Motor Vehicles, Vermont Driver's Manual, https://dmv.vermont.gov/sites /dmv/files/documents/VN-007-License_Manual.pdf [https://perma.cc/D9LR-P6ZS] [hereinafter DMV Driver's Manual]. To the contrary, the manual reiterates that "[t]he law states that a driver must use a turn signal not less than 100 feet before making a turn or changing lanes." DMV Driver's Manual at 27. As such, the manual, which is ultimately intended to "contribute to the selection of safe and efficient operators," requires a signal prior to turning and does not make any exceptions for turn-only lanes. 23 V.S.A. § 631. This supports our construction of the statute.

even when in left-turn only lane and even when it is physically impossible to turn right or go straight due to road configurations); People v. Tamburrino, 892 N.Y.S.2d 852, 854 (2009) (holding New York law creates absolute duty to use turn signal even when turning right from right-turn-only lane); State v. Smith, 2004-Ohio-791, ¶ 8, 805 N.E.2d 171 (holding "when required" language in Ohio turn signal statute did not make use of turn signal conditional and turn signal is required even if in turn-only lane); Commonwealth v. Brown, 64 A.3d 1101, 1106 (Pa. Super. Ct. 2013) (holding turn signal required under Pennsylvania statute that contained no exception for turn-only lanes); Wehring v. State, 276 S.W.3d 666, 671 (Tex. App. 2008) (explaining that turn signal is required under Texas law even in situations, such as turn-only lane, where there is only one direction to turn).  But see State v. Padilla, 850 P.2d 372, 373 (Or. Ct. App. 1993) (adopting presumed-course-of-travel test where driver is required to use signal only if deviating from presumed course of travel).

¶ 13.     Other courts have not required turn signals to be used where that state's turn-signal statute, unlike Vermont's, requires turn signal use only when it impacts upon the safety of other vehicles.  See State v. Goodman, 469 S.E.2d 327, 329 (Ga. Ct. App. 2009) (explaining Georgia "statute contemplates instances in which a turn on a roadway can be made with reasonable safety without the use of a turn signal, i.e., where a signal is not necessary to alert other drivers of a motorist's intention to turn"); State v. Ivey, 633 S.E.2d 459, 461 (N.C. 2006) (outlining North Carolina statute, which requires use of turn signal  "whenever the operation of any other vehicle may be affected by such movement" (quotation omitted)).

¶ 14.     The Vermont Legislature could have enacted turn-signal statutes that require the use of turn signals only when the safety of other vehicles might be affected, or it might have enacted statutes which specifically exempt the requirement of turn-signal use when turning in the

7

anticipated direction from a turn-only lane. It has done neither, and it is not up to us to substitute our judgment for the Legislature's, even were our judgment to differ.

¶ 15. Because Vermont's motor-vehicle statutes required defendant to signal before turning, we conclude that the officer here had a reasonable, articulable suspicion of wrongdoing.[3] The motion to dismiss was properly denied.

Affirmed.

FOR THE COURT:

_____
Associate Justice

---

[3] "[R]easonable suspicion does not require confirmation of criminal activity before making a stop. Specific and articulable facts, along with rational inferences warranting a reasonable belief in potential wrongdoing, are sufficient." State v. Edmonds, 2012 VT 81, ¶ 11, 192 Vt. 400, 58 A.3d 961 (emphasis omitted). "The distinction between reasonable suspicion and an actual violation is immaterial here, however, because the State has not asserted, and the court did not find, that the officers made a mistake of fact or law." Hutchins, 2015 VT 38, ¶ 7 n.*.